Porter, J.
delivered the opinion of the court. The petitioner states, that she is the mother and legal heir of Stephen Holstein, and that, as such, she is the legal owner and proprietor of a tract of land of ten arpents front, with the ordinary depth on the Bayou Cotile, bounded on the one side by lands formerly claimed by John Henderson, and now by Francis Henderson, and on the other by those of J. B. Vallery.
That she claims title to the premises in question by virtue of a requette of one Thomas Choate, dated in 1797, and actual settlement, improvement and cultivation by the said Choate for many years; a confirmation of the title, and a conveyance to her son Stephen Holstein, deceased.
The defendant denies the truth of these allegations, and pleads, that he owns the land sued for in pursuance of a title contained in the certificate of the commissioners of lands for the western district, in favour of John Henderson, under whom he holds; and that he, and those from whom he purchased, have *320 had quiet and uninterrupted possession of the property, in dispute, during more than ten consecutive years.
An obligation in the alternative gives the debtor the choice; hence where A promised to pay B. $500, or convey him a tract of land, held that it was not such a title as would enable B to plead prescription.
He also avers, that he has a right to the premises in consequence of a conveyance from Thomas Choate to John Henderson.
On this issue, evidence oral and written was taken in the inferior court; there was judgment against the plaintiff, and she has appealed.
As she must recover on the strength of her title, the first inquiry will be as to its validity.
She first presents us with a requette, dated in 1797, addressed to the intendant of Louisiana, in which her vendor asks for ten arpents of land in front, with the ordinary depth, situated below the land of Jean Baptiste Valery.
To this is added a certificate of the commandant, which we suppose intended to state that the land is vacant; but in the manner it is transcribed on the record, it is utterly unintelligible.
She next offers a report from the register of the land office, for this section of the state, in which it is mentioned, that Thos. Choate had filed a claim in that office for a tract of land of ten arpents front, by the ordinary depth *321 bounded on the upper side by a tract of John Henderson, and it is certified that this claim was confirmed by an act of Congress, passed 29th April, 1816.
In support of this title, parol evidence was taken in the court below, to prove its location; and the length of time the plaintiff, and those under whom she claims, had been in possession, and cultivated the land for which it calls.
This evidence is somewhat contradictory as to the time Choate settled there. One witness, Bayon, places it after the time Henderson went to New-Orleans, which was in the year 1800 or 1801; but the testimony of two other witnesses, Walsh and Patterson, who speak more positively as to this circumstance than any others, fix it in the year 1804, and that Choate remained there for one or two years:—that when he went away he left one Birnie, who continued, to hold it under him, until the year 1809, when it came into the possession of the present defendant.
The confirmation by the United States, vests a title in the plaintiff, but the circumstances attending the settlement, shows that it is nothing more than a naked right, and it is difficult to conceive any other claim which, if re *322 cognised by the general government, would not possess as strong equity.
It becomes necessary to examine if the defendants is such a one:—
It consists of a certificate from the commissioners, appointed for the purpose of ascertaining the rights to land in the western district, dated in 1811, which states, that John Henderson is confirmed in his claim to 444 12/100 arpents, founded on a settlement in the year 1800.
The parol testimony proves, that he was established on the premises in the year 1800 or 1801, that he was sent as a prisoner to New-Orleans, and being found innocent of the accusation against him, was sent back by the governor, and replaced on the land by the commandant of the post.
If it should turn out, in the investigation, that these titles call for the same land, it is our opinion that the plaintiff cannot recover; for they are not merely equal in dignity—that of the defendant is superior: it has possession under the former government, and some attempt, at least, is shown to comply with the laws under which the claimants lived; whilst, on the part of the plaintiff, neither settlement *323 or cultivation, before the change of government, is proved; and when Choate entered into possession, he was a trespasser and a violator of the laws of the United States.
But the plaintiff has contended, that admitting the correctness of these principles, she must still succeed, because her title calls for a different spot from that of the defendants.
This is the real difficulty in the case—its solution depends on the correctness of the location given to Henderson’s title, and we have most sensibly felt, in the examination and decision of the case, the embarrassment created by the circumstance, that neither of the parties have produced any evidence that their lands have been yet surveyed or located, under the authority of the general government. We have doubted, indeed, whether it was not our duty to remand the case until this was done; and have only been prevented from doing so, by the reflection, that we were not permitted to refuse deciding on the rights of suitors before us, in the expectation of an event which is uncertain, and depends on the will of a third party.
It is not easy to convey to the mind, without a plat of survey, the particular situation of *324 the land on which Choate and Henderson originally placed themselves. It may, in some degree, be understood, by stating that the bayou, on which both titles call to lie, makes, in that part of the country where the parties settled, a gradual and extensive bend, in the inner side of which, and on the lower end, is located a grant issued to Benjamin Grubb, which, running back forty arpents, meets the lines of a claim of one J. B. Vallery, which fronted in the upper part of the bend just described. The manner these two titles are located leaves a long and narrow strip of land between their side lines and the bayou Cotile, having a front of 37 arpents, and an irregular depth, and containing in the whole a superficies of 279 73/100 arpents.
On the lower part of this land, near to the line of Grubb and close to the bayou, Henderson cleared a field, and built a house on the opposite side. At the distance of from 20 to 24 arpents was Choate’s settlement, and the question is, how should their titles be located?
The defendant insists, that the manner his has been confirmed by the United States, gives him a right to cover the whole of this land. *325 The certificate, which it is contended authorizes this location, states that Henderson is confirmed in his claim to a tract of land containing 444 12/100 arpents, ” to be laid out in such a manner as to include the habitation on the west side, and the field cultivated by him on the opposite side of the bayou.”
It is true, as was urged in argument, there is no limitation here as to front. But neither is there any thing that allows an arbitrary location at the will of the claimant. We must, therefore, give it such limits as will satisfy the calls of the title, and interfere as little as possible with the rights of others.
It refers to objects on each side of the bayou, and, consequently, must be laid out on each; indeed the direction is imperative, that it shall include the house on the west side, and the field on the east. This is advancing one step, and with certainty—the rest is not quite so sure. But, in the silence of the title as to what quantity is to be given on the east, and what on the west, we think it should be so located as to give an equal portion to the claimant on both—no other mode will come so near satisfying the terms of the certificate. We apprehend too, that this manner of surveying is con *326 formable to general usage, and the practice under both the former and present governments, when the title called to lie on both sides of a water course.
It was contended by the appellant, that it must be surveyed, giving five arpents on the bayou, and running back forty; and that a location, which took in such an extensive front, was illegal. But the title does not call for so many arpents front and depth, and we are of opinion, that where a certain number of superficial arpents are granted on a part of a bayou where from the manner surrounding titles are surveyed, the quantity given cannot be satisfied but by taking land on the front—that there is neither law nor usage that prevents the claimants doing so.
Under this view of the rights of the defendant, there will remain within the limits of the tract of land already mentioned, 57 67/100 arpents of land, for which we conceive the plaintiff has exhibited title.
It remains to consider, if the defendant has acquired these 57 arpents by purchase or prescription—he contends he has done both.
The instrument which he has produced, as proving his purchase, is not an act transferring *327 the property; it is an obligation in the alternative, which might have been discharged by the money mentioned in it, and the debtor had the choice of doing so, or of giving the land. Civil Code, 276, art. 89-90. The circumstance of Choate holding, by himself and tenant, a considerable time after the time fixed in the instrument alluded to, is a proof that the intention of the parties did not differ from the construction which the law now requires us to give it.
This opinion, as to the nature of the act under which the defendant held, decides the plea of prescription; for if Choate had the right of coming forward at any moment and paying the money, Henderson did not own the soil. He did not possess with the will of a master, when he possessed at the will of another; he wanted, in respect to this thing, opinionem quæsiti dominii, which is the basis of the prescription of ten and twenty years. Pothier, Traite de Prescription, no. 90; Digest, 41, 4, 2, 2.
The defendant lastly contended, that the commissioner’s certificate of the year 1811, with possession of the premises since 1809, give him a title to the premises by prescri *328 ption. The correctness of this position depends on whether the title covered the land now claimed. We have already expressed our opinion, that it did not; and, holding without title, he could not acquire under 30 years.
Thomas for the plaintiff, Wilson for the defendant.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that the plaintiff do recover of the defendant, fifty-seven arpents 67/100 of the land claimed in his petition, to be taken from the upper side of the tract of 279 73/100 arpents, represented on the plat, beginning at the letter A on said survey, returned in the cause, and to be laid out so as to include the original settlement of Thos. Choate. It is further ordered, adjudged and decreed, that the defendant and appellee pay costs in both courts.